UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ANDREW R.,

                Plaintiff,

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

Case No. 2:23-cv-01470-AR

OPINION AND ORDER

---

**ARMISTEAD, Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security

benefits, plaintiff Andrew R. (his last name omitted for privacy) challenges the Administrative

Law Judge's evaluation of his subjective symptom testimony and the medical opinion evidence.

Because the court finds the ALJ's decision is based on substantial evidence, the Commissioner's

decision is AFFIRMED.[1]

---

[1]    This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have

**ALJ'S DECISION**

In denying plaintiff's applications for disability insurance benefits (DIB) and social security income (SSI), the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since August 31, 2019, his alleged onset date. (Tr. 17.) At step two, the ALJ determined that plaintiff had the following severe impairments: dysfunction of the left shoulder and seizure disorder. (Tr. 18.) At step three, the ALJ determined that his impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 20.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. §§ 404.1545, 416.945, the ALJ determined that plaintiff has the ability to perform light work with the following additional postural limitations:

> [plaintiff can] lift up to ten pounds occasionally with the dominant left upper extremity; lift up to twenty pounds occasionally and ten pounds frequently with the non-dominant right upper extremity; occasionally push/pull up to ten pounds with the left upper extremity; occasionally balance, as defined by the Selected Characteristics of Occupations (SCO); occasionally stoop, kneel, crouch, and crawl; never reach overhead and frequently reach in all other directions with the left upper extremity; frequently handle and finger with the left upper extremity; avoid all exposure to vibration to the left upper extremity; and avoid all exposure to unguarded moving mechanical parts and unprotected heights.

(Tr. 21.)

---

consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2]    To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

At step four, the ALJ determined that plaintiff cannot perform any past relevant work. (Tr. 25.) In light of his RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as school bus monitor, counter clerk, dispatcher, surveillance system monitor, order clerk, document preparer, and telephone quotation clerk. [3]  (Tr. 27.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

---

[3]      The Social Security Administration has, since the ALJ issued its decision, issued an Emergency Message that says that an adjudicator may not rely on 13 DOT occupations without additional evidence from a vocational specialist or vocational expert supporting the adjudicator's conclusions that, as currently performed, its requirements are consistent with the claimant's RFC or it exists in the national economy in numbers that alone, or combination with work in other cited occupations, are significant. EM-24027, June 22, 2024. "Surveillance system monitor" and "document preparer, microfilming," cited by the ALJ, are two of those professions. However, without those occupations, there remain enough jobs that exist in the national economy to support the ALJ's step-five findings.

## DISCUSSION

A.    *Plaintiff's Symptom Testimony*

Plaintiff argues that the ALJ improperly analyzed his subjective symptom testimony. Determining the credibility of a claimant's symptom testimony requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). At the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo*, 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

At his hearing, plaintiff stated that he struggles with side effects from his seizure medication, including irritability, nausea, and fatigue. (Tr. 59-61.) He no longer goes out and is unable to exercise due to his shoulder injury. (Tr. 57.) Plaintiff indicated in his adult function report that his ability to pay attention is limited and that he struggles to sleep at night. (Tr. 346, 349.) His function report also indicated that his illness has limited every area of functioning. (Tr. 349.)

Page 4  – OPINION AND ORDER

The ALJ discounted plaintiff's subjective symptom testimony because his activities of daily living and his medical treatment history were inconsistent with the alleged severity of his symptoms. Plaintiff challenges each reason.

### 1. Activities of daily living

The ALJ discounted plaintiff's testimony, in part, because his "daily activities and work activity after the alleged onset date are not as limited as one would expect from an individual alleging disability." (Tr. 23-24.) An ALJ may reject symptom allegations that are inconsistent with a claimant's ability to perform normal activities of daily living. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). There are two ways ADLs may support such rejection: (1) the ADLs contravene the claimant's allegations of functional limitations; or (2) the ADLs "meet the threshold for transferrable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally disabling impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

The ALJ's conclusion that plaintiff's activities of daily living exceed his alleged limitations is supported by substantial evidence and is a reasonable reading of the record. For example, the ALJ noted that plaintiff continued to run a radio station part-time during the adjudicative period. (Tr. 23-24.) Indeed, plaintiff attested to working anywhere from five hours per day, seven days per week to three-to-four hours per day. (Tr. 45, 311.) His work responsibilities include playing musical selections, seeking out financial sponsorships, and taking calls from station listeners. (Tr. 45-46.) Additionally, the ALJ pointed out that plaintiff's function report listed daily activities such as caring for his teenage daughter, shopping independently, caring for pets, driving, and attending church regularly. (Tr. 23, citing Tr. 349.)

Page 5 – OPINION AND ORDER

Plaintiff reported to a consultative examiner that he is independent in all activities of daily living. (Tr. 516.)

Plaintiff incorrectly asserts that the ALJ was required to demonstrate how his activities of daily living correlate to the ability to work: It is long settled in the Ninth Circuit that an ALJ may also consider whether a claimant's daily activities contradict their symptoms testimony. *Orn*, 495 F.3d at 639 (activities of daily living may be used to discount a claimant's symptom testimony, either by "meet[ing] the threshold for transferable work skills" or if those activities contradict a claimant's testimony). Here, plaintiff's ability to work consistently throughout the adjudicative period as well as his ability attend to all matters of personal care, including driving, shopping, cleaning, cooking, and attending church regularly, conflicts with the severity of his alleged limitations. Plaintiff alleges that the ALJ failed to consider that he receives assistance with household chores, but there is scant evidence of that within the record. Indeed, the only mention of plaintiff's daughter assisting him comes from a third-party report wherein a friend wrote that "he has his daughter help him a lot" with house and yardwork. (Tr. 354.) However, by his own self-reports he is independent in his daily activities and there is nothing inherent in this statement that contradicts his capacity to performing light work. In sum, the ALJ's conclusions are supported by substantial evidence.

### 2. Medical treatment history

The ALJ discounted plaintiff's symptom allegations, in part, because of his medical treatment history. Specifically, the ALJ noted plaintiff's symptoms were well controlled with medication, and he reported no significant side effects from his medications. Moreover, plaintiff's treatment was routine and conservative, limited to medication management. He has

not sought out more aggressive methods of treatment, such as surgical intervention; he has not

expressed an interest in other mental health treatment, such as therapy.

An ALJ may consider evidence of improvement when assessing the functional limitations

of a claimant. 20 C.F.R. §§ 404.1529a(c), 416.920a(c). However, an ALJ may not rely on "a few

isolated instances of improvement in the medical record as a basis for concluding a claimant is

capable of working." *Garrison*, 759 F.3d at 1017 (citation omitted). Yet symptoms may improve

with treatment. Such evidence of medical treatment successfully relieving symptoms can

undermine a claim of disability. *See* 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1); *see also*

*Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that

can be controlled effectively with medication are not disabling") (citations omitted). Moreover,

evidence that a claimant received only routine, conservative treatment can be sufficient to

discount his testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481

F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the

inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti*, 533

F.3d at1039. The amount of treatment is "an important indicator of the intensity and persistence

of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, plaintiff contends only that the ALJ improperly determined his medications cause

no significant side effects. That is, the ALJ failed to "provide specific, clear and convincing

evidence that [his] medication did not 'persistently' cause side effects." (Pl. Br. At 23.)

Plaintiff's records, however, support the ALJ's conclusions, as he reported to medical providers

that he "tolerat[es] [his medication] well without adverse side effects." (Tr. 540, 582.) Moreover,

plaintiff reported to providers that his medications were effective in controlling his seizures,

when taken as prescribed. (Tr. 526, 540, 582, 591.) Plaintiff attested to believing his

Page  7  – OPINION AND ORDER

antidepressant medication adequately managed his symptoms to the point where he did not feel the need for additional treatment. (Tr. 526.) This is substantial evidence that plaintiff's medication effectively controlled his symptoms, without significant side effects. The ALJ's conclusions are sound.

**B.    *Medical Opinion Evidence***

The regulations require that an ALJ evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 416.920c. The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 416.920c(b)(2)). Supportability is determined by whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 416.920c(c)(2).

**1.  Dr. Levitt's opinion**

Plaintiff argues that the ALJ erred in evaluating the supportability and consistency of the medical opinion of Brad W. Levitt, PsyD. (Pl. Br. at 15.) In December 2020, Dr. Levitt provided a psychological consultative exam in connection with plaintiff's disability application. Dr. Levitt opined that plaintiff's "negative and irritable mood, related anxious distress, and seemingly somewhat impaired memory and concentration skills" would likely "result in difficulties functioning adaptively at school or on a job over time and in a consistent manner." (Tr. 528.) Dr. Levitt stated that plaintiff was easily overcome by stressors and that his physical medical issues would likely "limit his abilities and exacerbate mental health symptoms." (Tr. 528.)

Page  8  – OPINION AND ORDER

The ALJ concluded Dr. Levitt's opinion was unpersuasive. According to the ALJ, Dr. Levitt's conclusions were not supported because he observed mostly normal clinical observations. (Tr. 25.) Additionally, the ALJ noted Dr. Levitt's opinion conflicted with plaintiff's consistent work history. (Tr. 25.) Finally, the ALJ pointed out that plaintiff's records showed mostly normal examinations, and that plaintiff rarely reported any mental health symptoms to providers. (Tr. 25.)

Plaintiff asserts that the ALJ erred in failing to discuss whether Dr. Levitt's opinion was supported by explanation. (Pl. Br. at 13.) But the ALJ discussed supportability, notably pointing out that Dr. Levitt's conclusions were not supported because he documented mostly normal clinical observations. (Tr. 25.) Indeed, Dr. Levitt's exam notes support the ALJ's conclusions. (Tr. 527) Plaintiff was "appropriately dressed" with good grooming and hygiene; he developed good rapport and was cooperative; he displayed good expressive and receptive language skills; he possessed "generally average cognitive functioning abilities" with "somewhat lower" memory and concentration skills; he had "good insight ability and good impulse control" with no unusual thought processes or thought content. (Tr. 527.) The ALJ's conclusions are supported by the record.

Plaintiff also assigns error to the ALJ's consistency analysis. The ALJ concluded Dr. Levitt's opinion was inconsistent with plaintiff's lack of reported mental health symptoms to providers. Plaintiff contends that the ALJ was required to investigate why plaintiff did not seek further mental health treatment. But the record shows no indication that plaintiff's level of care was inadequate or deficient. Nor is there any indication in the record that plaintiff's failure to seek additional treatment was due in any way to a mental impairment. Indeed, plaintiff communicated to Dr. Levitt that his antidepressant medication "seems to have some level of

positive impact, as least enough to have kept him from thinking his mood was in need of other forms of treatment." (Tr. 526.)

Plaintiff's argument that the ALJ failed to "explain why [his] mild neurocognitive disorder provides no limitations" fails for similar reasons. (Pl. Br. at 13.) The ALJ extensively discussed plaintiff's non-severe impairments, including his mild neurocognitive disorder. (*See* Tr. 19-20.) That the ALJ concluded that no limitations stem from plaintiff's non-severe neurocognitive disorder is directly supported in his analysis and in the record. For example, plaintiff's ability to run an internet radio station, including taking caller requests and reaching out to potential sponsors demonstrates he can follow instructions and interact with others on a daily basis. Moreover, the record reflects that plaintiff did not report any concerns of cognitive decline to his providers, outside of the consultative examination. (*See, e.g.*, Tr. 541, 568) In sum, the ALJ did not err in finding Dr. Levitt's opinion unpersuasive and the ALJ's conclusions regarding plaintiff's non-severe impairments are reasonable.

### 2. Agency doctors' opinions

The ALJ found that the agency doctors' conclusions that plaintiff has "severe mental impairments with moderate limitation in understanding, remembering, and applying information and in concentrating, persisting and maintaining pace" were not supported by reasonable explanation. And the agency doctors' opinion closely mirrored that of Dr. Levitt's, which the ALJ reasonably discounted as unpersuasive. Further noted by the ALJ was that the agency doctors' opinions were inconsistent with plaintiff's lack of mental health treatment and consistent work history throughout the adjudicative period.

Plaintiff argues that the ALJ was required to discuss each limitation assessed in the agency doctors' opinions. In plaintiff's view, that the ALJ failed to discuss both Dr. South's

Page 10 – OPINION AND ORDER

finding that plaintiff was limited to simple routine tasks and Dr. Kessler's finding that plaintiff

was limited to carrying out short simple instructions, amounts to reversible error. This is not,

however, what is required under the regulations. The regulations state that an ALJ must discuss

the supportability and consistency of medical opinions but does not require that an ALJ articulate

each medical opinion or prior administrative medical finding from one medical source

individually. 20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2). To require an ALJ to

perform an exhaustive examination of every limitation contained in a medical opinion deemed to

be unpersuasive would be unnecessarily cumbersome and inefficient.

Plaintiff additionally argues that the ALJ was required to explain why he "assigned an

ability to stand and/or walk six hours" when agency doctors concluded plaintiff was limited to

only four hours. The ALJ found that the postural limitations assessed by agency doctors were

partially persuasive, because the record did not support the more restrictive physical limitations

assessed. (Tr. 24.) An ALJ is only required to incorporate those limitations he finds to be reliable

and consistent with the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (an ALJ

need not prepare a function-by-function analysis for impairments found to be neither credible nor

supported by the record). In this case, there is no support in the record for a limitation to

plaintiff's ability to stand and walk. Indeed, upon physical examination, plaintiff was found to

have no limitations to walking or standing. (Tr. 521.) Thus, the ALJ did not err in his analysis of

the medical opinions of the agency doctors.

In summary, the ALJ's conclusions as to plaintiff's symptom testimony and the medical

opinions are based on substantial evidence and supported by reasonable references drawn from

the record.

## CONCLUSION

For the above reasons, the court AFFIRMS the Commissioner's final decision.

IT IS SO ORDERED.

DATED: October 22, 2024.

_____
JEFF ARMISTEAD
United States Magistrate Judge